**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Anthony Sodono, III
Shoshana Schiff
*Proposed Counsel to NJ Healthcare Facilities*
*Management LLC, Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NJ HEALTHCARE FACILITIES MANAGEMENT LLC a/k/a NEW JERSEY HEALTH CARE FACILITIES MANAGEMENT LLC d/b/a ADVANCED CARE CENTER AT LAKEVIEW, | Case No. 15-14871 (VFP) Honorable Vincent F. Papalia |
| Debtor. | |

**APPLICATION IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 507(a)(7) FOR AN ORDER AUTHORIZING CONTINUATION OF CERTAIN CUSTOM PRACTICES**

TO:   THE HONORABLE VINCENT F. PAPALIA
      UNITED STATES BANKRUPTCY JUDGE

NJ Healthcare Facilities Management LLC a/k/a New Jersey Health Care Facilities Management LLC d/b/a Advanced Care Center at Lakeview, the Chapter 11 debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C., hereby moves (the "Motion") before this Court for an order authorizing the Debtor to continue to use Future Care Consultants ('Future Care") to provide services relating to all accounts payable and collection of all accounts receivable for the Debtor in the ordinary course of business in the same manner as they did before the Petition Date (as defined below),

and such other similar policies, programs, and practices of the Debtor (collectively, the "Custom Practices"). In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363(b), and 507(a)(7).

## BACKGROUND

3. The Debtor filed its voluntary Chapter 11 petition on March 19, 2015 (the "Petition Date").

4. A history and description of the Debtor and its operations, together with the reasons for its Chapter 11 filing, are set forth in the certification of Linda Bowersox, the Debtor's managing member, in support of the Debtor's "first day" motions, which is incorporated herein as if set forth in its entirety.[1]

5. As part of its operations, the Debtor utilizes Future Care to perform all billing and collection for the Debtor and Future Care utilizes various credit cards as a form of payment, in addition to cash and checks. Future Care receives a flat fee of $14,500 for its services on a monthly basis. The use of Future Care's services is essential to the operation of the Debtor's business.

## RELIEF REQUESTED AND REASONS THEREFOR

6. By this Motion, the Debtor respectfully requests an order authorizing the Debtor to continue its practice of using Future Care to perform all billing and collection for the Debtor

---

[1] The certification of Ms. Bowersox is filed simultaneously herewith.

and allow Future Care to accept credit cards as a method of payment by customers in the ordinary course of business, in the same manner as the Debtor did before the Petition Date, and to honor and continue such other similar policies, programs and practices of the Debtor (the "Custom Practices"). The Motion does not seek to assume any credit card processing agreements.

7. Before the Petition Date, the Debtor used Future Care for all billing and collection in the ordinary course of its business. It has done so pursuant to an agreement that is ordinary and customary in the industry.

8. The Debtor requests that it be authorized to continue to utilize the services of Future Care after the Petition Date. Moreover, the Debtor requests that the fees payable to Future Care, be paid in the ordinary course if such fees were owed pre-petition but were not actually paid or drawn-down until post-petition.

9. Essentially, the Debtor desires to continue during the post-petition period those Custom Practices that it believes were beneficial to its business and cost-effective during the pre-petition period. The Debtor believes that such relief is necessary to preserve, during the post-petition period, its critical relationships with its clientele and goodwill for the benefit of the estate.

10. The success and viability of the Debtor's business, and ultimately the Debtor's ability to successfully reorganize its business, are dependent upon the continued patronage and loyalty of its customers and its relationship with its credit card vendors. Accordingly, the Debtor seeks Court approval for the continuation of its ordinary Custom Practices.

11.     The Debtor seeks authorization pursuant to sections 105(a) and 507(a)(7) of the Bankruptcy Code to continue the Custom Practices and to perform certain pre-petition obligations in respect thereof as necessary.

12.     Numerous courts have used their section 105(a) equitable powers under the necessity of payment doctrine to authorize payment of a debtor's pre-petition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and preserve the debtor's potential for rehabilitation. See In re Lehigh & New England Ry., 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of the corpus"); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)) (doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"). Ultimately, the "necessity of payment" doctrine is intended to facilitate the paramount goal of chapter 11; namely, "facilitating the continued operation and rehabilitation of the debtor…." Ionosphere Clubs, 98 B.R. at 176.

13.     The loyalty and continued patronage of the Debtor's customers is critical to the Debtor's financial health and reorganization prospects and Future Care is critical to the customer relationships. Numerous courts, including courts in this Circuit and elsewhere, have granted relief similar to that requested herein. See, e.g., In re Pliant Corporation, et al., Case No. 06-10001 (MFW) (Bankr. D. Del. Jan. 4, 2006) (authorizing continuation of numerous consumer programs including customer rebates and customer loyalty programs); In re Budget Group, Inc.,

Case No. 02-12152 (MFW) (Bankr. D. Del. 2002) (authorizing debtors to, among other things, honor customer deposit obligations and pay customer refund, reimbursement and supplemental insurance obligations); In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. July 23, 2002) (authorizing continuation of numerous customer service programs including promotional services, billing credits, returns and exchanges and allowing debtors to honor customer deposits); ANC Rental Corporation, et al., Case No. 01-11200 (MFW) (Bankr. D. Del. Dec. 17, 2001) (authorizing payment of customer and consumer obligations); In re NationsRent, Inc., Case No. 01-11628 (PJW) (Bankr. D. Del. Dec. 18, 2001) (authorizing payment of customer obligations in the ordinary course of business, including rebates, credits, re-rent charges, deposit refunds and special order charges); In re United Artists Theatre Company, et al. Case No. 00-3519 (SLR) (Bankr. D. Del. Sept. 5, 2000) (authorizing debtors to continue customer programs and practices); In re Filene's Basement, Inc., Case No. 99-16984 (Bankr. D. Mass. Aug. 24, 1999) (authorizing continuation and payment of certain pre-petition consumer practices). In this case, there are maybe certain "specials" or other program that the Debtor seeks to honor to maintain customer loyalty.

14.    The success, viability, and revitalization of the Debtor's business are dependent upon the maintenance of customer loyalty. To preserve the value of its business, the Debtor must be permitted to continue offering credit card services to its clientele and honoring all Custom Practices, without interruption or modification.

15.    The continued operation of the Debtor's business is dependent upon the collection of accounts receivables by Future Care.

16.    Accordingly, authorizing the Debtor to continue its Customer Practices is in the best interests of the Debtor, its estate, and creditors.

17.     No trustee, examiner, or official committee has been appointed in this Chapter 11 case.  Notice of this Motion has been provided to the (i) Office of the Unites States Trustee; (ii) the Debtor's pre-petition secured lenders; (iii) the creditors identified as the Debtor's twenty (20) largest unsecured creditors, and any party who has requested notice.  In light of the exigent circumstances and emergency nature of the relief requested in this Motion and the immediate harm to the Debtor's estate that will certainly follow if the relief requested herein is not granted, the Debtor respectfully submits that any further notice is not feasible under the circumstances.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an order, substantially in the form submitted herewith, authorizing the continuation of certain Custom Practices and (ii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**TRENK, DIPASQUALE,
DELLA FERA & SODONO, P.C.**
*Proposed Counsel to NJ Healthcare Facilities Management LLC, Debtor and Debtor-in-Possession*

By*:    /s/ Anthony Sodono, III*
            Anthony Sodono, III

Dated:  March 20, 2015

4841-7620-6370, v.  1