**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Anthony Sodono, III
Shoshana Schiff
*Proposed Counsel to NJ Healthcare Facilities*
*Management LLC, Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NJ HEALTHCARE FACILITIES MANAGEMENT LLC a/k/a NEW JERSEY HEALTH CARE FACILITIES MANAGEMENT LLC d/b/a ADVANCED CARE CENTER AT LAKEVIEW, | Case No. 15-14871 (VFP) Honorable Vincent F. Papalia |
| Debtor. | |

**DEBTOR'S APPLICATION FOR A BRIDGE ORDER AND A FINAL ORDER (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING, OR REFUSING SERVICE; (II) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT; AND (III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C. §§ 105(a) AND 366**

**TO:   THE HONORABLE VINCENT F. PAPALIA**
       **UNITED STATES BANKRUPTCY JUDGE**

NJ Healthcare Facilities Management LLC a/k/a New Jersey Health Care Facilities Management LLC d/b/a Advanced Care Center at Lakeview, the Chapter 11 debtor and debtor-in-possession ("Debtor"), by and through its proposed counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C., hereby applies to this Court (the "Application") for (i) a bridge order (the "Bridge Order") and (ii) a final order (the "Final Order") pursuant to 11 U.S.C. §§105(a) and 366, (a) prohibiting its utility companies (the "Utility Companies") from discontinuing, altering or

refusing service to the Debtor except as set forth herein, (b) deeming the Utility Companies adequately assured of future performance on the basis of payment of a Utility Deposit (as defined below), and (c) establishing procedures for resolving requests for additional assurance of payment. In support of the Application, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 366.

## PROCEDURAL BACKGROUND AND DESCRIPTION OF DEBTOR'S OPERATIONS

1. On March 19, 2015 (the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this motion, no trustee, examiner or creditors' committee has been appointed in this case.

3. A history and description of the Debtor and its operations, together with the reasons for its Chapter 11 filing, are set forth in the certification of Linda Bowersox, the Debtor's Managing Member, filed in support of the Debtor's "first day" motions, which is incorporated herein as if set forth in its entirety.[1]

## RELIEF REQUESTED

4. By this Application, the Debtor seeks entry of (i) a Bridge Order, and (ii) a Final Order, pursuant to Sections 105(a) and 366 of the Bankruptcy Code, (a) prohibiting the Utility

---

[1] The certification of Ms. Bowersox is filed simultaneously herewith.

Companies from discontinuing, altering or refusing service to the Debtor, except as set forth herein, (b) deeming the Utility Companies adequately assured of future performance on the basis of payment of a two (2) week security deposit (the "Utility Deposit"), and (c) establishing procedures for resolving requests for additional assurance of payment.

5. In the operation of its business, the Debtor incurs utility expenses in the ordinary course of business for, among other things, gas, electricity, water and sewer charges, internet and telephone service. A non-exhaustive list of the Utility Companies and the estimated amount of the monthly charges for each is annexed as **Exhibit "A**." Debtor proposes to pay two (2) weeks average usage as a deposit for adequate protection.

6. Uninterrupted utility services are essential to the Debtor's ongoing operations and, therefore, to the success of the Debtor's Chapter 11 efforts. Indeed, any disruption to the Debtor's business by virtue of the cessation of utility services by the Utility Companies will bring the Debtor's operations to a halt. While the Debtor has exercised its best efforts to list all of its Utility Companies on **Exhibit "A"** it is possible that certain Utility Companies may have been inadvertently omitted from this list.

7. Accordingly, the Debtor reserves the right, pursuant to the terms and conditions of this Application and without further order of the Court, to amend **Exhibit "A"** to add any Utility Companies that were omitted therefrom and to request that the relief requested herein apply to all such entities as well. In addition, the Debtor reserves the right to argue that any of the entities now or hereafter listed on **Exhibit "A"** are not "utilities" within the meaning of Section 366(a) of the Bankruptcy Code. If one or more of the Utility Companies refuse or discontinue service even for a brief period, the Debtor's operations would be severely disrupted. Such an interruption would damage customer relationships, revenues, and profits and would ultimately

adversely affect the Debtor's Chapter 11 efforts, to the detriment of its estate, creditors, and employees.  It is, therefore, critical that utility services provided to the Debtor continue uninterrupted.

## ADEQUATE ASSURANCE OF PAYMENT

8. Section 366(a) of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing service to a debtor for the first thirty (30) days of a bankruptcy case (the "Utilities Stay Period").  Upon expiration of the Utilities Stay Period, however, section 366(b) of the Bankruptcy Code provides that a utility company may (but need not) terminate services if a debtor has not provided such utility with adequate assurance of payment.

9. In accordance with Section 366(c)(1)(A), the Debtor proposes to provide additional assurance of payment as set forth herein.  Specifically, the Debtor proposes to issue a security deposit equal to approximately two weeks' estimated average utility consumption (the "Utility Deposit") to each Utility Company as indicated on **Exhibit "A,"** within ten (10) business days after the date of entry of a Final Order granting this Application.

10. Additionally, the Debtor seeks to establish reasonable procedures by which Utility Companies may request additional adequate assurance of future payment, if a Utility Company believes that the Utility Deposit does not provide them with satisfactory adequate assurances.  The Debtor submits that reasonable procedures would provide that:

   a) Absent any further order of this Court and except as otherwise provided herein, the Utility Companies may not alter, refuse or discontinue service to, or discriminate against, the Debtor on account of the commencement of this Chapter 11 case or any unpaid pre-petition charges.  Section 366(c)(1)(A) provides that the term "adequate assurance of payment" means (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

4

b) The Debtor will serve the Application and the Bridge Order, if granted by the Court, via first-class mail, within five (5) business days after the date that the Bridge Order is entered by the Court, on each of the Utility Companies identified on **Exhibit "A"** attached hereto. If a Utility Company was omitted from **Exhibit "A,"** the Debtor shall have the right to supplement **Exhibit "A"** and shall promptly provide notice of the Order upon learning of such Utility Company.

c) Any Utility Company may request additional assurance of payment (an "Additional Payment Request") on or before the date set forth in the Bridge Order for a Final Hearing (the "Additional Payment Request Deadline") by submitting the request to counsel to the Debtor, Trenk, DiPasquale, Della Fera & Sodono, 347 Mount Pleasant Avenue, Suite 300, West Orange, NJ 07052, Attention: Anthony Sodono, III, Esq.

d) Any Additional Payment Request must (i) be in writing, (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits or other pre-payments or assurances previously provided by the Debtor, (iv) describe in sufficient detail the reason(s) why the treatment afforded pursuant to the procedures set forth herein does not constitute satisfactory adequate assurance of payment, (v) include a proposal for what would constitute adequate assurance from the Debtor, along with an explanation of why such proposal is reasonable.

e) If a Utility Company makes a timely Additional Payment Request that the Debtor believes is reasonable, the Debtor shall be authorized in its sole discretion to comply with such request without further order of the Court.

f) If the Debtor believes that a Utility Company's Additional Payment Request is unreasonable, the Court will conduct a Final Hearing on the date set forth in the Bridge Order (a "Determination Hearing") to determine adequate assurance to such Utility Company as necessary, or if additional assurance as to payment to such Utility Company is necessary.

g) Pending resolution of a Utility Company's Additional Payment Request at a Determination Hearing, such party shall be prohibited from altering, refusing or discontinuing service to the Debtor.

h) If a Utility Company fails to send an Additional Payment Request by the Additional Payment Request Deadline, such Utility Company shall have waived its right to make an Additional Payment Request and shall be deemed to have received adequate assurance of payment in accordance with Section 366(c)(1)(A)(vi) by virtue of the Utility Deposit (Utility Companies that do not send Additional Payment Requests to the parties

    set forth above by the Additional Payment Request Deadline shall be collectively referred to herein as the "Consenting Utility Companies").

  i) A Utility Company shall be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further adequate assurance of payment.

## BASIS FOR RELIEF

  11. This Court has the authority to grant the relief requested herein pursuant to Sections 105(a) and 366(a) of the Bankruptcy Code. Section 366 of the Bankruptcy Code is designed to protect debtors from utility service cutoffs, while also providing utility companies with adequate assurance that debtors will be able to pay for post-petition services. See H.R. Rep. No. 95-595, at 350 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Pursuant to 11 U.S.C. § 366(c)(2), a utility may not, during the first thirty (30) days of the case, alter, refuse, or discontinue services to a debtor in a Chapter 11 case solely because of unpaid pre-petition amounts. The utility, however, may do so thereafter unless the debtor furnishes "adequate assurance" of payment (which the Debtor seeks to do through this Application), in the form of a deposit or otherwise, for post-petition services in a form "satisfactory" to the utility within twenty (20) days of the Filing Date.

  12. In addition, Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." COLLIER ON BANKRUPTCY ¶ 105.01, at 105-06 (15th ed. rev. 2004).

  13. The Debtor submits that the Court should use its Section 105(a) powers in this Chapter 11 case because the relief requested herein is necessary to continue the Debtor's normal business operations. The relief requested herein is necessary because the Debtor could face a

severe cash drain if the Utility Companies condition the provision of post-petition services to the Debtor upon the payment of exorbitantly burdensome and/or unreasonable deposits or other forms of adequate assurance.

14. As set forth above, Section 366(c)(1)(A) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, now provides that "adequate assurance of payment" means (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee. Accordingly, while the statute now specifies the form of assurance that will be deemed to be adequate, it leaves the question of the amount of assurance that must be provided squarely within this Court's discretion.

15. Leaving the determination as to the amount of assurance that a debtor will need to provide in the discretion of the Court conforms with the pre-amendment case law, under which courts generally looked to the facts and circumstances of each case to ensure that utility companies were not subjected to an unreasonable risk of nonpayment for post-petition services. See, e.g., In re Keydata Corp., 12 B.R. 156, 158 (1st Cir. BAP 1981). Courts construing Section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guaranty of the debtor's ability to pay. See, e.g., In re Caldor, Inc. NY, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [bankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guaranty of payment.'") (citation omitted); In re Penn Jersey Corp., 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b)

"contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances . . .").

16. Further, courts have recognized that, in determining what constitutes "adequate assurance," a bankruptcy court must "focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co. v. Caldor, Inc.-NY, 117 F.3d 646, 650 (2d. Cir. 1997) (quoting Penn Jersey, 72 B.R. at 985).

17. As set forth above, if Utility Companies are permitted to terminate utility services on the thirty-first day after the Filing Date, a substantial disruption to the Debtor's operations will occur, and the Debtor's business will be irreparably harmed.  If faced with imminent termination of utility services, the Debtor would then be forced to pay whatever amounts are demanded by the Utility Companies to avoid the cessation of essential utility services and, ultimately, the demise of its business.

18. The Debtor submits that the procedures set forth herein provide an orderly process for providing adequate assurance of payment to the Utility Companies, without risking irreparable harm to the estates.  Because the fundamental nature of section 366 has not been changed by the 2005 amendments -- that the Court has discretion to modify any request for assurance of payment and that the assurance of payment need only be adequate in light of the facts and circumstances of a given case -- the determination procedures are similar to those approved by courts prior to the 2005 amendments to the Bankruptcy Code.  However, as set forth above, and in accordance with Section 366(c)(1)(A) of the Bankruptcy Code, the Debtor will provide additional assurance of payment, if deemed necessary by the Court, if a Utility Company makes an Additional Payment Request.

19. Without the procedures set forth herein, the Debtor could be forced to address numerous requests by Utility Companies in a haphazard manner at a critical period, while the Debtor is trying to conduct its business. The Debtor could be forced to capitulate to almost any demands made by its Utility Companies, or face the discontinuation of utility service to its facility and a potential shutdown of its business. The orderly process contemplated by the procedures set forth herein will avert such a potentially disastrous outcome, enabling the Debtor to make a smooth transition into Chapter 11, while ensuring a fair process for providing adequate assurance to the Utility Companies to the extent required.

20. Procedures similar to the procedures detailed herein have been approved by courts in the Circuit under the standards set forth by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See In re Neilson Nutraceutical, Inc., Case No. 06-10072 (PJW) (Bankr. D. Del. February 23, 2006).

21. Accordingly, based on the foregoing facts and authorities, the Debtor believes that granting the relief requested herein will not prejudice the rights of the Utility Companies under Section 366 of the Bankruptcy Code.

## NOTICE

22. Notice of this Application has been provided to the Office of the United States Trustee for the District of New Jersey, Debtor's pre-petition secured creditors, the Debtor's list of top twenty (20) unsecured creditors, and the Utility Companies. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## **NO PRIOR REQUEST**

23. The Debtor has not previously sought the relief requested herein from this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter a Bridge Order and at the Final Hearing enter a Final Order, in substantially the form submitted herewith, (a) prohibiting the Utility Companies from discontinuing, altering or refusing service to the Debtor, except as set forth herein, (b) deeming the Utility Companies adequately assured of future performance on the basis of the establishment of a Utility Deposit, (c) establishing procedures for resolving requests for additional assurance of payment, and (d) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**TRENK, DiPASQUALE,
DELLA FERA & SODONO, P.C.**
*Proposed Counsel to NJ Healthcare Facilities Management LLC, Debtor and Debtor-in-Possession*

By:     */s/ Anthony Sodono, III*
       Anthony Sodono, III

Dated: March 20, 2015

4838-8902-7618, v. 1

# Exhibit "A"

# Utilities

| Company Name | Address | Monthly Average | Proposed Deposit |
|---|---|---|---|
| JCP&L | 76 South Main Street Akron, OH 44308 | $13,000.00 | $6,500.00 |
| Wayne Township Water & Sewer | 475 Valley Road Wayne, NY 07470 | $3,000.00 | $1,500.00 |
| Cablevision | c/o Optimum Shared Services 6 Corporate Center Drive Melville, NY 11747 | $1,435.00 | $717.50 |
| PSE&G | 80 Park Plaza Newark, NJ 07101 | $4,000.00 | $2,000.00 |
| AT&T | 208 S. Akard Street Dallas, TX 75202 | $3,000.00 | $1,500.00 |
| T-Mobile | 12920 SE 38th Street Bellevue, WA 98006 | $280.00 | $140.00 |

4842-2601-3730, v. 1